

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-25-00025-CV

IN THE INTEREST OF A.L.S., T.T., AND E.S., CHILDREN

On Appeal from the 62nd District Court
Hopkins County, Texas
Trial Court No. CV45482

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

## MEMORANDUM OPINION

The Department of Family and Protective Services filed a petition to terminate Mother's parental rights to her three children, A.L.S., T.T., and E.S.[1]  J.S. was married to Mother when A.L.S., T.T., and E.S. were born, but K.T. was believed to be listed on T.T.'s birth certificate. The trial court ordered genetic testing, which determined that K.T. was the biological father of T.T. and E.S.  J.S. appeals the trial court's adjudication of parentage.  On appeal, J.S. argues "that his right to Due Process was violated as a result of the Department[']s failure to furnish either himself or the Court documentation showing that he was not the bio[logical] father of the . . . two children."  The State argues that J.S. failed to preserve this issue because he did not make his constitutional due process objection at trial.  Because we agree that J.S.'s sole issue on appeal is not preserved, we affirm the trial court's judgment.

## I.      Factual Background

Parentage regarding T.T. and E.S. arose in the context of a November 13, 2023, petition by the Department alleging that T.T., and then E.S., had been exposed, in utero, to methamphetamine.  The petition alleged that Mother and K.T. resided together.  The Department removed all three children on an emergency basis, citing not only the in-utero exposure of both T.T. and E.S., but also the ongoing drug use of Mother and K.T.  The Department's petition sought the termination of the parental rights of Mother, K.T., and J.S.  However, the Department acknowledged that J.S. was the "legal father" of all three children, and upon removal of all of the children from Mother and K.T., the Department had placed A.L.S. with J.S. as the "non-

---

[1]We use pseudonyms and initials to protect the identity of the children.  *See* TEX. R. APP. P. 9.8.

offending parent." When contacted by the Department, J.S. immediately made clear that he wanted not only A.L.S., but also T.T. and E.S. The Department declined to place all three children with J.S., citing what it contended was a lack of a relationship between J.S., T.T., and E.S. At the time of the petition, the Department was working on placing T.T. and E.S. with a relative of K.T.[2] The Department asked that paternity be established regarding K.T. as to T.T. and E.S. The trial court ordered genetic testing regarding all three children.

Based upon the DNA testing, the trial court determined parentage for all three children on June 17, 2024.[3] In one order, the trial court found that J.S. is the biological father of A.L.S., and therefore made J.S. the legally adjudicated father of A.L.S. In a separate order of the same date, the trial court found that K.T. is the biological father of T.T. and E.S., and therefore made K.T. the legally adjudicated father of T.T. and E.S. Between June 17, 2024, and the date of trial, February, 24, 2025, the record does not reveal any objection or motion by J.S. regarding those determinations of parentage. At the final hearing, the trial court observed: "[V]ery often we are up here in a proceeding like this and no one is here. No one cares." The trial court expressed gratitude for all of the family members who had stepped up to care for the children, including J.S.

J.S. appeals the trial court's final order of March 4, 2025. In its final order, the trial court terminated Mother's parental rights to all the children and terminated K.T.'s parental rights to

---

[2]Subsequent to the date of the petition, T.T. was placed with K.T.'s mother. E.S. was placed with K.T.'s cousin.

[3]Genetic testing ordered by the trial concluded that (1) J.S. had a 99.99996% probability of being A.L.S.'s biological father, (2) K.T. had a 99.9999% probability of being T.T.'s biological father, and (3) K.T. had a 99.98% probability of being E.S.'s biological parent.

T.T. and E.S.[4]  The final order also appointed J.S. as managing conservator of A.L.S., the paternal grandmother as managing conservator of T.T., and the Department as managing conservator of E.S., with a cousin of K.T. and her husband as prospective adoptive parents.

## II.    J.S. Failed to Preserve His Sole Issue on Appeal

"[A] determination of parentage is binding on . . . all parties to an adjudication . . . ." TEX. FAM. CODE ANN. § 160.637(a)(2).  Even so, "[a] party to an adjudication of paternity may challenge the adjudication only under the laws of this state relating to appeal."  TEX. FAM. CODE ANN. § 160.637(e).

K.T. underwent genetic testing before J.S., and the results of K.T.'s DNA test established that he was T.T.'s and E.S.'s biological father.  On appeal, J.S. argues that the trial court denied him due process by failing to also test his DNA against T.T.'s and E.S.'s DNA.  J.S. did not file any request for the trial court to conduct any additional genetic testing.  He also failed to raise any due process issue with the trial court.

"Preservation of error is a systemic requirement on appeal."  *In re E.R.C.*, 496 S.W.3d 270, 276 (Tex. App.—Texarkana 2016, pet. denied) (quoting *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009)).  "We should not address the merits of an issue if it has not been preserved for appeal."  *Id.* at 277 (citing *Ford*, 305 S.W.3d at 532–33).  "To preserve a complaint for our review, a party must first present to the trial court a timely request, objection, or motion stating the specific grounds for the desired ruling if those are not apparent from the context."  *Id.* (citing TEX. R. APP. P. 33.1(a)(1)).  "This preservation rule applies to due process challenges

---

[4]Mother and K.T. do not appeal.

. . . ." *Id.* (citing *Low v. Henry*, 221 S.W.3d 609, 619 (Tex. 2007); *In re L.M.I.*, 119 S.W.3d 707, 710–11 (Tex. 2003)).

Our review of the appellate record shows that J.S. failed to make the due process argument he makes on appeal in front of the trial court. In a letter to this Court, J.S. also admitted that "his complaint does not have any basis within [the] record." Because J.S. failed to preserve his sole issue for our review, we overrule it.

## III.    Conclusion

We affirm the trial court's judgment.

Charles van Cleef
Justice

Date Submitted:     August 21, 2025
Date Decided:       September 3, 2025

5